ROBERT E. CAREY, JR., ESQ. (SBN 47556)
CAREY & CAREY
706 COWPER STREET
P.O. BOX 1040
PALO ALTO, CA  94302-1040
650/328-5510
650/853-3632 FAX

Attorneys for Defendant
JOSE BONILLA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>     vs.<br><br>JOSE BONILLA,<br><br>           Defendant. | CASE NO. CR-07-00251 RMW<br><br>MOTION OF JOSE BONILLA TO WITHDRAW PREVIOUSLY ENTERED PLEAS OF GUILTY TO THE INDICTMENT<br><br>Date:     1/12/09<br>Time:     9:00 am<br>Hon. Ronald M. Whyte |

I.

INTRODUCITON

Through this motion, the Defendant JOSE BONILLA, moves the Court to withdraw his previously-entered pleas of guilty to both counts of the indictment in this case, which charge felon in possession of a gun and possession of an unregistered firearm.  The motion itself is grounded upon the basis that the Defendant, at the time of the entry of his plea, did not understand that such a plea would subject him to probable deportation.  As addressed below, the facts demonstrate a "fair and just reason" for requesting the withdrawal under Rule 11(D)(2)(b), Federal Rules of Criminal Procedure.

///

## II.

## STATEMENT OF RELEVANT PROCEEDINGS IN THIS CASE

On November 5, 2007, JOSE BONILLA appeared before this Court. At that time, he entered a plea of guilty to both counts of the indictment, which charged him with being a felon in possession of a firearm and, also, the possession of an unregistered firearm. Mr. BONILLA pleaded guilty to both charges without entering into a plea bargain agreement with the government.

During the voir dire of Mr. BONILLA at the entry of the plea, no questioning was undertaken concerning the issue of deportation or the fact that Mr. BONILLA was not a citizen. Similarly, neither counsel for Mr. BONILLA, nor Mr. BONILLA, brought these matters to the attention of the Court.

## III.

## STATMENT OF REVELANT FACTS

Mr. BONILLA was born in Mexico. His parents brought him to the United States in his early youth. He received his first green card in approximately 1988. He has lived in Watsonville, California, as a permanent resident for his entire adult life.

Mr. Bonilla'S wife, his 16 year old daughter, and his 9 year old son, are citizens of the United States. They live with him in the family home in Watsonville.

Mr. BONILLA has been employed for most of his adult life. In the year 2000, he began suffering from a panic disorder and a major depressive disorder. Although he continued to work for a period of time, by April of 2006, he was put on disability. He was on disability for those disorders from approximately April 2006 through the year 2007. His employment disability having expired (State disability), he is now unemployed.

At all times since 2007, he has been taking prescription medications, in order to combat his stress and depression. He noted that fact during the voir

dire itself. (Transcript, 11/5/07, p.4, attached as Exhibit "A").

At the time of the entry of the plea, Mr. BONILLA did not realize or understand, nor had he been told, that the entry of the plea in this matter to the offenses with which he was charged, would probably result in his deportation. Following the plea, a discussion was had between his prior counsel, Mr. Bonilla's wife, and Mr. BONILLA, wherein he found that it was very probable that, as a result of his plea on November 5, 2007, he would be deported. Had he been aware of the deportation consequences, he would have been able to request his previous counsel to explore different types of plea bargains or, if necessary, proceed to trial. These would be especially meaningful to Mr. BONILLA, since the alternative that he now faces is not only imprisonment, but the sure separation from his wife and children, who wish to continue to reside in the United States for employment and educational purposes.

At the time of the entry of his plea, Mr. BONILLA'S counsel was apparently unaware of Mr. BONILLA'S immigration status. In that regard, Mrs. Bonilla had questioned previous counsel's private investigator about the deportation consequences some 2-3 days before the entry of the plea. However, the private investigator did not relay this information and her inquiries to Mr. BONILLA'S counsel until after the entry of the plea.

Following the entry of the plea, contact was made with an immigration specialist. It appears that there is a very high likelihood of deportation, under the plea as now structured, if Mr. BONILLA is convicted — even though he is a long-time permanent resident, and his wife and children are citizens.

IV.

MEMORANDUM OF POINTS AND AUTHORITIES

Under Rule 11(D)(2)(b), Federal Rules of Criminal Procedure, a Defendant who "can show a fair and just reason for requesting the withdrawal" may

withdraw a plea of guilty prior to sentencing. In that regard, the predecessor statute which contained the "fair and just reason" terminology (former Rule 32(e), Federal Rules of Criminal Procedure), provided that a "court may permit the plea to be withdrawn if the defendant shows <u>any</u> fair and just reason". See, United States v. Kwan, 407 F.3d 1005, 1017 (9th Cir. 2005). (italics added)

In United States v. Kwan, supra, pp.1017-1018, the Court granted the *writ of coram nobis* based both upon a defense attorney's incorrect advice regarding immigration consequences, and the failure to pursue a withdrawal of a plea. There, the Court noted that if the defendant had withdrawn his plea, he could have gone to trial, re-negotiated his plea agreement to avoid deportation, pled guilty to a lesser charge, or, for that matter, the parties could have stipulated that the particular defendant would be sentenced to less than one year in prison. See, United States v. Kwan, supra, pp. 1017-1018. The Court then went on to note under Rule 11's predecessor section that "a sentencing court may exercise its discretion to permit a defendant to withdraw his guilty plea prior to sentencing if the defendant shows a fair and just reason for requesting the withdrawal".

Other circuits have followed this rule. In United States v. Couto, 311 F.3d 179 (2nd Cir. 2002), the Court vacated a conviction and reversed the District Court's order refusing to allow the withdrawal of the plea, where the attorney gave incorrect advice regarding immigration consequences. There, the Court indicated that the defendant's attorney's affirmative misrepresentation about the deportation consequences of a guilty plea fell below an objective standard of reasonableness and the defendant's overriding concern of remaining in the United States in that Court's opinion rendered the defendant's plea "involuntary" because of her counsel's ineffective assistance.

Finally, in Stubbs v. Thomas, 590 F.Supp. 94, 100 (D.C.N.Y. 1984), the Court found that the ineffective actions of a court-appointed investigator may

constitute ineffective assistance of counsel under the Sixth Amendment. There, the Court held that an investigator, appointed by the Court to assist an indigent criminal defendant and his counsel with pretrial investigation, should be held to the same constitutional standard of care as a court-appointed attorney. The failure to provide reasonably competent investigative assistance, the Court noted, could constitute a violation of the defendant's Sixth Amendment right to effective assistance of counsel. Stubbs v. Thomas, supra, p.100.

Taken in context, the plea of JOSE BONILLA was neither knowing, nor voluntary. Since he did not understand the consequences of that plea (insofar as probable deportation was concerned), he was essentially foreclosed from exercising a knowing and a voluntary choice. Similarly, because of the same lack of knowledge, he was deprived of the ability to pursue alterative remedies (a different charge, an agreed-upon sentence, or a trial).

Finally, it does not appear that the government will be prejudiced by the withdrawal of this plea. Instead, they will be placed in the very same position they were before the entry of the plea.

V.

CONCLUSION

Based upon the above argument and authority, as well as any further pleadings or documentation to be filed in this matter, it is respectfully requested that JOSE BONILLA be allowed to withdraw his two previously-entered pleas of guilty in this matter and that the matter be set for a status conference so that it can be either resolved or set for trial.

DATED:  January 7, 2009                    Respectfully submitted,

CAREY & CAREY

/S/
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
ROBERT E. CAREY, JR. Attorneys for
Defendant JOSE BONILLA

Exhibit "A"

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN JOSE DIVISION
                                              COPY
 4

 5
     UNITED STATES OF AMERICA,   ) CR-07-00251 RMW
 6                               )
                     PLAINTIFF,  ) SAN JOSE, CALIFORNIA
 7                               )
                 VS.             ) NOVEMBER 5, 2007
 8                               )
     JOSE HERNANDEZ BONILLA,     ) PAGES 1-12
 9                               )
                     DEFENDANT.  )
10   _____)

11

12             TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE RONALD M. WHYTE
13             UNITED STATES DISTRICT JUDGE

14


15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                           BY:  THOMAS M. O'CONNELL
17                         150 ALMADEN BOULEVARD
                           SUITE 900
18                         SAN JOSE, CALIFORNIA   95113

19


20   FOR THE DEFENDANT:    FEDERAL PUBLIC DEFENDER'S OFFICE
                           BY:  LARA S. VINNARD
21                         160 WEST SANTA CLARA STREET
                           SUITE 575
22                         SAN JOSE, CALIFORNIA   95113

23


24   OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595
25
```

```
 1    SAN JOSE, CALIFORNIA                    NOVEMBER 5, 2007
 2                    P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5              THE CLERK:  FIRST MATTER, CR-07-00251,
 6    U.S.A. VERSUS JOSE HERNANDEZ BONILLA, ON FOR
 7    STATUS.
 8              MS. VINNARD:  GOOD MORNING, YOUR HONOR.
 9    LARA VINNARD FOR MR. BONILLA.  HE'S PRESENT OUT OF
10    CUSTODY.
11              MR. O'CONNELL:  GOOD MORNING, JUDGE.
12    THOMAS O'CONNELL FOR THE GOVERNMENT.
13              THE COURT:  GOOD MORNING.  WHAT'S THE
14    STATUS?
15              MS. VINNARD:  WE'RE PREPARED TO GO
16    FORWARD WITH AN OPEN PLEA.
17              THE COURT:  OKAY.
18              THE CLERK:  RAISE YOUR RIGHT HAND.
19              (JOSE HERNANDEZ BONILLA, DEFENDANT,
20    SWORN.)
21              THE DEFENDANT:  YES.
22              THE CLERK:  THANK YOU.
23              THE COURT:  ALL RIGHT.
24              MR. BONILLA, IT'S MY UNDERSTANDING THAT
25    YOU WISH TO ENTER A PLEA IN THIS CASE.
```

1  IS THAT CORRECT?

2  THE DEFENDANT: THAT'S CORRECT.

3  THE COURT: I'M GOING TO BE ASKING YOU
4  SOME QUESTIONS THIS MORNING AND ADVISING YOU OF
5  SOME RIGHTS.

6  IF AT ANY TIME YOU HAVE ANY QUESTIONS,
7  PLEASE LET ME KNOW BECAUSE I WANT TO MAKE SURE YOU
8  UNDERSTAND YOUR RIGHTS AND THE EFFECT OF PLEADING
9  GUILTY.

10  SINCE I HAVE HAD YOU SWORN TO TELL THE
11  TRUTH, I'M REQUIRED BY LAW TO ADVISE YOU THAT
12  SHOULD YOU ANSWER ANY OF MY QUESTIONS WITH AN
13  ANSWER THAT YOU KNOW IS INCORRECT, THAT COULD GET
14  YOU INTO FURTHER DIFFICULTY WITH THE LAW FOR MAKING
15  A FALSE STATEMENT TO THE COURT UNDER OATH, AND IF
16  YOU WERE EVER CHARGED WITH MAKING A FALSE STATEMENT
17  TO THE COURT UNDER OATH, WHAT YOU SAID HERE TODAY
18  COULD BE USED AGAINST YOU.

19  DO YOU UNDERSTAND THAT?

20  THE DEFENDANT: YES, I DO.

21  THE COURT: HAVE YOU BEEN PROVIDED WITH
22  THE -- WITH A COPY OF THE CHARGES BEING BROUGHT
23  AGAINST YOU?

24  THE DEFENDANT: YES.

25  THE COURT: OKAY. AND ARE YOU CURRENTLY

```
 1    TAKING ANY KIND OF MEDICATION OR DRUG OR ANYTHING
 2    THAT AFFECTS YOUR ABILITY TO THINK CLEARLY AND MAKE
 3    DECISIONS?
 4              THE DEFENDANT:  I'M TAKING SOME
 5    PRESCRIBED MEDICATION, BUT I'M --
 6              THE COURT:  IT DOESN'T AFFECT YOUR --
 7              THE DEFENDANT:  IT DOESN'T AFFECT MY
 8    ABILITY TO ANSWER YOUR QUESTIONS.
 9              THE COURT:  OKAY.  AND ARE YOU SATISFIED
10    WITH YOUR LAWYER?
11              THE DEFENDANT:  YES, I AM.
12              THE COURT:  OKAY.  HAS ANYBODY PROMISED
13    YOU ANYTHING IN ORDER TO GET YOU TO PLEAD GUILTY?
14              THE DEFENDANT:  NO, SIR.
15              THE COURT:  HAS ANYBODY TRIED TO FORCE
16    YOU TO PLEAD GUILTY?
17              THE DEFENDANT:  NO, SIR.
18              THE COURT:  NOW, THERE ARE TWO CHARGES
19    AGAINST YOU.
20              THE FIRST CHARGE IS THAT ON OR ABOUT
21    JULY 29TH, 2006, AS OF THAT DATE, YOU'D BEEN
22    PREVIOUSLY CONVICTED OF A CRIME THAT CARRIED A TERM
23    OF IMPRISONMENT EXCEEDING ONE YEAR; THAT ON
24    JULY 29TH, 2006, YOU KNOWINGLY POSSESSED A FIREARM;
25    AND THAT THAT FIREARM HAD TRAVELED IN INTERSTATE
```

```
 1    COMMERCE.
 2              THE MAXIMUM PUNISHMENT FOR THAT OFFENSE
 3    IS TEN YEARS OF IMPRISONMENT; A $250,000 FINE; A
 4    THREE YEAR PERIOD OF SUPERVISED RELEASE; AND A $100
 5    MANDATORY SPECIAL ASSESSMENT.
 6              THE SECOND CHARGE AGAINST YOU IS FOR
 7    POSSESSION OF AN UNREGISTERED FIREARM.
 8              THAT CHARGE BASICALLY SAYS THAT ON
 9    JULY 29TH, 2006, YOU POSSESSED A FIREARM AND THAT
10    THE FIREARM WAS NOT REGISTERED IN THE NATIONAL
11    FIREARMS REGISTRATION AND TRANSFER RECORD.
12              THE MAXIMUM PUNISHMENT FOR THAT OFFENSE
13    IS ALSO TEN YEARS OF IMPRISONMENT; A $250,000 FINE,
14    A THREE YEAR PERIOD OF SUPERVISED RELEASE; AND A
15    $100 SPECIAL ASSESSMENT.
16              SUPERVISED RELEASE IS A PERIOD OF TIME
17    AFTER SOMEONE'S RELEASED FROM ANY CUSTODY SENTENCE
18    IN WHICH HIS ACTIVITIES ARE RESTRICTED, AND SHOULD
19    HE VIOLATE ONE OF THOSE RESTRICTIONS, HE CAN BE
20    PLACED BACK INTO CUSTODY IMMEDIATELY.
21              THE COMPLAINT -- OR, RATHER, THE
22    INDICTMENT ALSO SEEKS TO HAVE YOU FORFEIT TO THE
23    GOVERNMENT THE FIREARM REFERENCED IN THE
24    INDICTMENT.
25              NOW, DO YOU FEEL YOU UNDERSTAND WHAT THE
```

5

```
 1    GOVERNMENT WOULD HAVE TO PROVE AND THE PUNISHMENTS
 2    FOR EACH OF THOSE OFFENSES?
 3            THE DEFENDANT:  YES.
 4            THE COURT:  ALL RIGHT.  NOW, YOU HAVE
 5    CERTAIN RIGHTS.
 6            YOU HAVE THE RIGHT TO PLEAD NOT GUILTY,
 7    TO CONTINUE IN THAT PLEA, AND TO HAVE THIS CASE GO
 8    TO TRIAL.
 9            IF THE CASE GOES TO TRIAL, YOU'D HAVE A
10    RIGHT TO BE REPRESENTED BY COUNSEL.  IF YOU
11    COULDN'T AFFORD COUNSEL, COUNSEL COULD BE PROVIDED
12    FOR YOU AT NO COST.
13            YOU'D BE PRESUMED TO BE INNOCENT AND
14    COULD NOT BE FOUND GUILTY UNLESS AND UNTIL THE
15    GOVERNMENT PROVED YOUR GUILT BEYOND A REASONABLE
16    DOUBT.
17            YOU'D HAVE A RIGHT TO FACE, QUESTION,
18    CROSS-EXAMINE ANY EVIDENCE OR WITNESSES CALLED BY
19    THE GOVERNMENT.
20            YOU'D HAVE A RIGHT TO PRESENT EVIDENCE
21    AND WITNESSES ON YOUR OWN BEHALF.
22            YOU COULD TESTIFY YOURSELF IF YOU WISHED.
23            ON THE OTHER HAND, IF YOU WANTED TO
24    REMAIN SILENT, YOU COULD DO SO AND YOUR SILENCE
25    COULD NOT BE HELD AGAINST YOU OR COMMENTED ON BY
```

```
1    THE GOVERNMENT.
2              YOU'D ALSO HAVE THE RIGHT TO HAVE THE
3    COURT ORDER WITNESSES TO APPEAR IF YOU MADE THAT
4    REQUEST.
5              IF YOU PLEAD GUILTY, THERE WILL BE NO
6    TRIAL AND YOU'LL BE FOUND GUILTY BASED UPON WHAT
7    I'M TOLD THIS MORNING.
8              NOW, DO YOU FEEL YOU UNDERSTAND YOUR
9    RIGHTS?
10             THE DEFENDANT:  YES, YOUR HONOR.
11             THE COURT:  OKAY.  WOULD THE GOVERNMENT
12   OUTLINE THE EVIDENCE IT HAS, PLEASE?
13             MR. O'CONNELL:  YES, SIR.
14             YOUR HONOR, IF THIS CASE WERE TO PROCEED
15   TO TRIAL, THE GOVERNMENT WOULD PROVE BEYOND A
16   REASONABLE DOUBT THAT ON OR ABOUT JULY 29TH, 2006,
17   POLICE IN WATSONVILLE, CALIFORNIA, RESPONDING TO A
18   GANG ALTERCATION.
19             THEY NOTICED A GMC YUKON VEHICLE WITH AN
20   OPEN WINDOW WITH A SAWED-OFF SHOTGUN LYING ON THE
21   FRONT SEAT OF THAT VEHICLE.
22             AFTER SECURING THE SAWED-OFF SHOTGUN,
23   THEY ASCERTAINED THAT THE VEHICLE BELONGED TO THE
24   DEFENDANT, MR. BONILLA.
25             THE SHOTGUN WAS SUBMITTED TO THE
```

```
 1    LABORATORY.  MR. BONILLA'S FINGERPRINTS WERE
 2    RECOVERED, OR AT LEAST ONE LATENT FINGERPRINT WAS
 3    RECOVERED WHICH MATCHED MR. BONILLA.
 4              THE SHOTGUN HAD AN OVERALL LENGTH OF 24
 5    INCHES AND A BARREL LENGTH OF 13 INCHES, WHICH WERE
 6    BOTH BELOW THE STATUTORY REQUIREMENT OF AN 18-INCH
 7    BARREL AND AN OVERALL LENGTH OF 26 INCHES.
 8              THE SHOTGUN WAS NOT REGISTERED IN THE
 9    NATIONAL FIREARMS REGISTRATION TRANSFER RECORD.
10              AND THE DEFENDANT HAD SUFFERED ONE PRIOR
11    FELONY CONVICTION; THAT IS, A CRIME PUNISHABLE BY
12    AT LEAST ONE YEAR IN PRISON.
13              THE COURT:  ALL RIGHT.  MR. BONILLA, AS
14    OF JULY 29TH, 2006, DID YOU HAVE A FELONY
15    CONVICTION?  IN OTHER WORDS, A CONVICTION FOR AN
16    OFFENSE THAT CARRIED A PUNISHMENT OF MORE THAN A
17    YEAR?
18              THE DEFENDANT:  YES, YOUR HONOR.
19              THE COURT:  OKAY.  AND ON JULY 29TH,
20    2006, DID YOU POSSESS A SAWED-OFF REMINGTON 12
21    GAUGE SHOTGUN?
22              THE DEFENDANT:  YEAH.  YES, YOUR HONOR.
23              THE COURT:  OKAY.  YOU KNEW YOU HAD IT;
24    RIGHT?
25              THE DEFENDANT:  YEAH.
```

1    THE COURT: OKAY. AND DO YOU AGREE THAT
2  THE WEAPON TRANSFERRED AT SOME POINT IN ITS
3  LIFETIME FROM ONE STATE TO ANOTHER?
4    THE DEFENDANT: I DIDN'T --
5    MS. VINNARD: MAY THE COURT PHRASE THE
6  QUESTION AS WE AGREED THE GOVERNMENT WOULD PROVE?
7    THE COURT: YEAH. DO YOU HAVE ANY -- DO
8  YOU DISPUTE THAT THE GUN IN ANY -- LET ME START
9  THAT AGAIN.
10    THE GOVERNMENT HAS TO PROVE THAT THE
11  SHOTGUN TRAVELED FROM ONE STATE TO ANOTHER AT SOME
12  POINT IN TIME BEFORE YOU WERE FOUND WITH IT.
13    DO YOU DISPUTE THAT THE GOVERNMENT COULD
14  PROVE THAT BEYOND A REASONABLE DOUBT?
15    (DISCUSSION OFF THE RECORD BETWEEN
16  MS. VINNARD AND THE DEFENDANT.
17    THE DEFENDANT: NO, YOUR HONOR.
18    THE COURT: OKAY.
19    MR. O'CONNELL: YOUR HONOR, FOR THE
20  RECORD, THE WEAPON -- I NEGLECTED TO MENTION
21  THIS -- WAS, IN FACT, MANUFACTURED IN NEW YORK, SO
22  IT HAD TO HAVE TRAVELED IN INTERSTATE COMMERCE.
23    THE COURT: OKAY. AND WITH RESPECT TO
24  THE SECOND OFFENSE, WAS THE GUN REGISTERED TO YOU
25  UNDER -- IN THE NATIONAL FIREARM REGISTRATION AND

```
 1   TRANSFER RECORD?
 2              THE DEFENDANT:  IF IT WAS REGISTERED TO
 3   ME?
 4              THE COURT:  YES.
 5              THE DEFENDANT:  NO.
 6              THE COURT:  OKAY.  AND DID YOU KNOW THAT
 7   IT WAS NOT REGISTERED TO YOU?
 8              (DISCUSSION OFF THE RECORD BETWEEN
 9   MS. VINNARD AND THE DEFENDANT.)
10              THE DEFENDANT:  YES, YOUR HONOR.
11              THE COURT:  OKAY.  AND, AGAIN, YOU KNEW
12   YOU HAD THE WEAPON; CORRECT?
13              THE DEFENDANT:  YES, YOUR HONOR.
14              THE COURT:  OKAY.  AND DO YOU UNDERSTAND
15   AND -- WELL, LET ME ASK IT THIS WAY:  ARE YOU
16   AGREEING THAT THE FIREARM CAN BE FORFEITED TO THE
17   GOVERNMENT?
18              THE DEFENDANT:  YES, YOUR HONOR.
19              THE COURT:  OKAY.  ALL RIGHT.  IS THERE
20   ANYTHING FURTHER THE GOVERNMENT WOULD LIKE ME TO
21   ASK?
22              MR. O'CONNELL:  YES, JUDGE.  JUST THAT
23   THE DEFENDANT ACKNOWLEDGES THAT HE KNEW THE NATURE
24   OF THE FIREARM; THAT IS, THAT IT HAD BEEN MODIFIED
25   SUCH THAT THE OVERALL LENGTH WAS LESS THAN 26
```

```
 1    INCHES AND/OR THE BARREL LENGTH WAS LESS THAN 18

 2    INCHES.

 3            THE COURT:  OKAY.  DO YOU AGREE WITH THAT

 4    STATEMENT?

 5            THE DEFENDANT:  YES, YOUR HONOR.

 6            THE COURT:  OKAY.  ANYTHING ELSE?

 7            MR. O'CONNELL:  NO, SIR.

 8            THE COURT:  ALL RIGHT.

 9            IS THERE ANYTHING FURTHER YOU'D LIKE ME

10    TO ASK OR TALK TO YOUR CLIENT ABOUT BEFORE I ASK

11    HIM HOW HE PLEADS, MS. VINNARD?

12            MS. VINNARD:  NO, YOUR HONOR.

13            THE COURT:  MR. BONILLA, DO YOU HAVE ANY

14    QUESTIONS BEFORE I ASK YOU HOW YOU PLEAD?

15            THE DEFENDANT:  NO, YOUR HONOR.

16            THE COURT:  ALL RIGHT.  AT THIS TIME,

17    THEN, I'D ASK YOU HOW YOU PLEAD TO COUNT ONE, WHICH

18    IS A FELON IN POSSESSION OF A FIREARM, GUILTY OR

19    NOT GUILTY?

20            THE DEFENDANT:  GUILTY.

21            THE COURT:  AND AS TO COUNT TWO, WHICH IS

22    POSSESSION OF AN UNREGISTERED FIREARM, GUILTY OR

23    NOT GUILTY?

24            THE DEFENDANT:  GUILTY.

25            THE COURT:  AND I THINK WE'VE COVERED
```

```
 1    THIS, BUT YOU AGREE THAT THE GUN MAY BE FORFEITED

 2    TO THE GOVERNMENT?  YOU AGREE THAT THE

 3    GOVERNMENT -- THAT THE FIREARM MAY BE FORFEITED TO

 4    THE GOVERNMENT?

 5            THE DEFENDANT:  YES, YOUR HONOR.

 6            THE COURT:  OKAY.  ALL RIGHT.  THE COURT

 7    FINDS THAT MR. BONILLA IS MAKING A KNOWING AND

 8    VOLUNTARY PLEA THAT'S SUPPORTED BY AN INDEPENDENT

 9    BASIS IN FACT AND THE COURT FINDS HIM GUILTY AT

10    THIS TIME.

11            SENTENCING DATE?

12            THE CLERK:  MARCH 10TH, '08.

13            MS. VINNARD:  THAT'S ACCEPTABLE TO THE

14    DEFENSE, YOUR HONOR.

15            MR. O'CONNELL:  THAT'S FINE, JUDGE.

16            THE COURT:  OKAY.  THANK YOU.

17            MR. O'CONNELL:  THANK YOU.

18            MS. VINNARD:  THANK YOU.

19            (WHEREUPON, THE PROCEEDINGS IN THIS

20    MATTER WERE CONCLUDED.)

21

22

23

24

25
```

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595